Peter M. ("Mac") Lacy (OSB # 013223)
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR  97211
(503) 525-0193
lacy@onda.org

Talasi B. Brooks (*Pro Hac Vice*)
Western Watersheds Project
PO Box 2863
Boise, ID  83701
(208) 336-9077
tbrooks@westernwatersheds.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, et al., | Case No. 2:21-cv-297-HL |
| Plaintiffs, | **PLAINTIFFS' RESPONSE OPPOSING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, and BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................3

LEGAL BACKGROUND ......................................................................................................9

ARGUMENT ........................................................................................................................10

I.   Exceptions To The Mootness Doctrine Apply And The Bureau Has Not Carried Its Heavy
     Burden Of Proving Otherwise ..................................................................................12

     A.  The Bureau's voluntary cessation of its Decision through the Notice of Rescission does
         not moot the case ..............................................................................................12

     B.  The Bureau's actions also are capable of repetition yet evading review. ..........................17

II.  WWP's Case Is Not Moot Because The Court Can Provide Effective Relief By Vacating The
     EA and FONSI. ....................................................................................................19

     A.  The EA and FONSI are reviewable under the Administrative Procedure Act. ................19

     B.  WWP's injuries from the EA and FONSI are not injuries "*in vacuo.*" ..........................22

CONCLUSION.....................................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)..................................................................9

*American Rivers v. National Marine Fisheries Service.*, 126 F.3d 1118 (9th Cir. 1997) .............17

*Bennett v. Spear*, 520 U.S. 154 (1997) ...............................................................................20

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ................................................12, 23

*Chafin v. Chafin*, 568 U.S. 165 (2013) ..............................................................................10

*Cure Land, LLC v. U.S. Department of Agriculture*, 833 F.3d 1223 (10th Cir. 2016).................20

*Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006)................................................2, 10, 17

*Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167 (2000) ....................12, 23

*Hamamoto v. Ige*, 881 F.3d 719 (9th Cir. 2018)...................................................................17

*Idaho Department of Fish & Game v. National Marine Fisheries Service*, 56 F.3d 1071 (9th Cir. 1995) ..........................................................................................................18

*Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012) .................17, 18

*Kern v. Bureau of Land Management*, 284 F.3d 1062 (9th Cir. 2002)....................................16, 23

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016) ...............................................17

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012)...............................2, 10, 12, 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)....................................................................22, 23

*Maldonado v. Lynch*, 786 F.3d 1155 (9th Cir. 2015) .......................................................................9

*Massachusetts. v. Watt*, 716 F.2d 946 (1st Cir. 1983) .................................................................14

*Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000).........................................................................14

*National Parks & Conservation Association v. Babbitt*, 241 F.3d 722 (9th Cir. 2001) ...............14

*National Wildlife Federation v. National Marine Fisheries Service*, No. 3:01-cv-0640-SI, 2017 WL 1829588 (D. Or. Apr. 3, 2017).................................................................................14

*Native Village of Nuiqsut v. Bureau of Land Management,* 9 F.4th 1201 (9th Cir. 2021) ........................................................................................................................14, 15, 18

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1997) ....................12, 15

*Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726 (1998)..........................................................22

*Oregon Natural Desert Association v. Bureau of Land Mgmt.*, 625 F.3d 1092 (9th Cir. 2010) .....2

*Oregon Natural Desert Association v. Jewell*, 840 F.3d 562 (9th Cir. 2016) ...........................3, 4

*Oregon Natural Desert Association v. Singleton*, 75 F. Supp 2d 1139 (D. Or. 1999) ...........13, 16

*Oregon Natural Desert Association v. Singleton*, No. 3:98-cv-97-AA ...................................13, 16

*Oregon Natural Desert Association v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006)...............

*Pasqua Yaqui Tribe v. EPA*, No. CV-20-266-TUC-RM, 2021 WL 3855977 (D. Ariz. Aug. 30, 2021) ..........................................................................................................................21

*Rattlesnake Coalition v. U.S. Environmental Protection Agency*, 509 F.3d 1095 (9th Cir. 2007) ........................................................................................................................................20

*Sierra Club v. Marsh*, 872 F.2d 497 (1st Cir. 1989)....................................................................5, 6

*Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808 (8th Cir. 2006) ..............................20

*Southern Oregon Barter Fair v. Jackson County., Oregon*, 372 F.3d 1134 (9th Cir. 2004).........10

*Southwest Williamson County Community Association v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999) ...................................................................................................................20

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .........................................................22, 23

*Sze v. INS*, 153 F.3d 1005 (9th Cir. 1998) ...............................................................................13

*Te-Moak Tribe of Western Shoshone of Nevada v. U.S. Department of Interior*, 608 F.3d 592 (9th Cir. 2010)...............................................................................................................20

*Western Watersheds Project v. Bernhardt ("Bernhardt I")*, 391 F. Supp. 3d 1002 (D. Or. 2019) .....................................................................................................................3–5, 17, 19

*Western Watersheds Project v. Bernhardt ("Bernhardt II")*, 392 F. Supp. 3d 1225 (D. Or. 2019) .....................................................................................................................3–6

*Western Watersheds Project v. Bernhardt ("Bernhardt III")*, 428 F. Supp. 3d 327 (D. Or. 2019) .....................................................................................................................3, 7

*Western Watersheds Project v. Bernhardt*, 519 F. Supp. 3d 763 (D. Idaho 2021)........................13

**STATUTES**

5 U.S.C. § 706........................................................................................................................2, 20, 21

16 U.S.C. § 460nnn-12(a) .............................................................................................................3

42 U.S.C. § 4332(2)(C)....................................................................................................................14

**REGULATIONS**

43 C.F.R. § 4110.3–1 ....................................................................................................................16

43 C.F.R. § 4140.1 ..........................................................................................................................4

**OTHER AUTHORITIES**

Notice of Intent To Prepare the Bridge Creek Area Allotment Management Plans Environmental Impact Statement in the Andrews Field Office, Burns District, Oregon, 86 Fed. Reg. 68,682 (Dec. 3, 2021) .......................................................................................................9, 15, 16

News Release (Mar. 25, 2020) available at https://eplanning.blm.gov/public_projects/nepa/1504684/20015184/250020325/Official_Press_R elease.pdf. ............................................................................................................................7

**INTRODUCTION**

Plaintiffs Western Watersheds Project, the Oregon Natural Desert Association, WildEarth Guardians, and the Center for Biological Diversity (collectively, "WWP") filed this action to challenge the "Final Decision" (the "Decision") of former Interior Secretary David Bernhardt— on the last full day of the Trump Administration—to unlawfully allow livestock grazing in a protected area on Steens Mountain in southeastern Oregon. The Decision was based upon a flawed environmental review and without the public process required by law. It would have permitted hundreds of domestic cattle to graze the four Bridge Creek Allotments for the first time since 2019, despite the heavily degraded condition of the lands from fires and grazing. The day after WWP filed its Complaint, Defendants (collectively, "the Bureau") issued a notice "rescinding" the Secretary's Decision. In early December 2021, the Bureau announced its intention to begin a new National Environmental Policy Act ("NEPA") process for the allotments. The Bureau has so far refused, however, to similarly withdraw the flawed Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") that supported the agency's decision to graze and which, unless vacated by this Court, could be used by the Bureau to support a new decision to allow grazing on the allotments.

Nevertheless, the Bureau now moves to dismiss WWP's case, claiming rescission of the Secretary's Decision document mooted the case and WWP cannot assert actual injury to any concrete interest. The Bureau is wrong and the Court may review the case for two reasons: First, the Bureau's "voluntary cessation" of its conduct by "rescinding" the Secretary's Decision cannot moot the case because the Bureau only withdrew the Decision in response to WWP's litigation and could revive the rescinded decision at any time (including based upon the still-

existing EA and FONSI). *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08

(2012) (discussing voluntary cessation exception to mootness doctrine). The EA and FONSI—

which remain in place—may impermissibly cloud the Bureau's "additional" environmental

review and portend that WWP could reasonably be subject to the same action again, especially in

light of the Bureau's record of violating the law when issuing grazing decisions for these

allotments. WWP's injury is therefore also "capable of repetition yet evading review." *United

States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009) (describing capable of repetition yet

evading review exception to mootness doctrine).

Second, WWP was not only injured by the Secretary's Decision, but by the Bureau's EA

and its decision (the FONSI) that grazing would have "no" significant impact on the

environment. The Court can grant effective relief for WWP's injuries if it sets aside and vacates

these unlawful "agency action[s], findings, and conclusions" and enjoins the Bureau from

authorizing grazing on the Bridge Creek Allotments until the agency has completed a lawful

environmental review, including taking a fresh "hard look" at the environmental consequences

and full range of options for how to manage the land and resources on this area of Steens

Mountain. 5 U.S.C. § 706(2) (court "shall . . . hold unlawful and set aside *agency action*,

*findings, and conclusions* found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law") (emphasis added); *see also* Compl. at 46 (ECF 1)

("Prayer for Relief"); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1099–

1100 (9th Cir. 2010) (describing NEPA's "hard look" requirement). At minimum, the

declaratory relief WWP seeks would prevent the Bureau from continuing to violate the law. *See

Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (granting declaratory relief to

prevent continued legal violations). In short, the case and controversy here remains live.

## FACTUAL AND PROCEDURAL BACKGROUND

This case marks the second time WWP has been forced to seek review by this Court of an apparently politically-motivated decision granting privileges to graze the Bridge Creek Allotments on Steens Mountain. *See W. Watersheds Proj. v. Bernhardt* ("*Bernhardt III*"), 428 F. Supp. 3d 327, 332–33, 337–42 (D. Or. 2019) (detailed summary of prior decision-making process and litigation, in issuing summary judgment in WWP's favor); *W. Watersheds Proj. v. Bernhardt ("Bernhardt II")*, 392 F. Supp. 3d 1225 (D. Or. 2019) (granting preliminary injunction barring grazing); *W. Watersheds Proj. v. Bernhardt ("Bernhardt I")*, 391 F. Supp. 3d 1002 (D. Or. 2019) (granting temporary restraining order barring grazing). We briefly summarize the context of the current litigation for the Court's convenience.

The "Bridge Creek Allotments" are four grazing allotments—Hammond, Mud Creek, Hardie Summer, and Hammond FFR—on the southwest slope of Steens Mountain, near the town of Frenchglen and adjoining the Malheur National Wildlife Refuge. Compl. ¶ 3.[1] The area lies within the Steens Mountain Cooperative Management and Protection Area ("CMPA"), a unique landscape in southeastern Oregon's high desert, designated by Congress "to conserve, protect, and manage the long-term ecological integrity of Steens Mountain for future and present generations." *Bernhardt I*, 391 F. Supp. 3d at 1015 (quoting 16 U.S.C. § 460nnn-12(a)); *see also Or. Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 565 (9th Cir. 2016) (generally describing Steens Mountain). Consisting of about 11,000 acres of Bureau-managed public land, the allotments have been heavily damaged by livestock and fire, but have significant restoration potential and provide habitat for greater sage-grouse, redband trout, and other native species.

---

[1] As the Bureau concedes, on a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." Mot. to Dismiss at 5–6.

Throughout this area, the Bureau has designated Priority Habitat Management Areas and General Habitat Management Areas for sage-grouse in the agency's 2015 Approved Resource Management Plan Amendment for sage-grouse—which provides important conservation measures for this imperiled bird throughout Oregon's high desert. *See Bernhardt I*, 391 F. Supp. 3d at 1015. The Mud Creek allotment contains a sage-grouse breeding ground called a lek. *Id*. Several streams within the area are home to redband trout, a species designated as sensitive by the Bureau. *See Bernhardt II*, 392 F. Supp. 3d at 1241, 1243–33; *see also Jewell*, 840 F.3d at 565–66 (also describing sage-grouse and its habitat on Steens Mountain).

Hammond Ranches, Inc. ("HRI") has been grazing on public lands since 1963. *Bernhardt II*, 392 F. Supp. 3d at 1237. From 2004 to 2014, HRI held a Bureau-issued permit to graze its livestock on the Bridge Creek allotments. *Id*. In 2014, the Bureau denied HRI's application to renew that permit because it found that the HRI principals, Steven and Dwight Hammond, had failed to comply with their permit terms in light of their arson convictions for setting fires on the public lands in an attempt to increase "forage" for their cattle in 2001 and 2006. *Id*. at 1237–39. Setting fire to public lands was a violation of HRI's grazing permit, which incorporated a term prohibiting "cutting, burning, spraying, destroying, or removing vegetation without authorization and damaging or removing U.S. property without authorization." *Id*. at 1237–38 (citing 43 C.F.R. § 4140.1). HRI administratively appealed and sought to stay the permit nonrenewal decision. *Id*. at 1238–39.

In 2018, while HRI's administrative appeal was pending, then-President Donald Trump pardoned the Dwight and Steven Hammond for their arson convictions. *Id*. at 1239. Following those pardons, on December 28, 2018, then-Secretary Ryan Zinke assumed jurisdiction over the pending administrative appeal. On January 2, 2019—his last day in office—Secretary Zinke

ordered the Bureau to renew HRI's grazing permit. *Id*. The Bureau complied and determined the

action was "categorically excluded" from further environmental review under NEPA. *Id*. at

1240.

WWP challenged the permit renewal decision and categorical exclusion and sought

injunctive relief. *See generally id.* In June 2019, this Court entered a temporary restraining order

preventing the Bureau from authorizing livestock turnout on two of the allotments where turnout

had not yet occurred—the Mud Creek and Hardie Summer allotments. *Bernhardt I*, 391 F. Supp.

3d at 1026. The Court held that WWP had shown a likelihood of success on its claim that the

Bureau violated NEPA by issuing the permit based upon a categorical exclusion, without

preparing an EA or Environmental Impact Statement ("EIS"). *Id*. at 1018. Judge Simon found

that grazing in this area is likely to cause harm to sage-grouse and their habitat by reducing

vegetation important to the bird's breeding, nesting and brood-rearing seasons, increasing the

spread of weeds that replace native sagebrush plant communities and fragment essential habitat

areas, degrading riparian areas and wet meadows, and impairing the connectivity of the fragile

Mud Creek lek (breeding site) to neighboring leks. *Id*. at 1016.

The Court also determined that WWP was likely to suffer irreparable harm from the

challenged NEPA violations. Among other reasons, "*when a decision to which NEPA obligations*

*attach is made without the informed environmental consideration that NEPA requires, the harm*

*that NEPA intends to prevent has been suffered.*" *Id*. at 1022–23 (quoting *Sierra Club v. Marsh*,

872 F.2d 497, 500 (1st Cir. 1989)) (emphasis original). This kind of harm under NEPA also can

have persistent negative effects: "to set aside the agency's action at a later date will not

necessarily undo the harm" since "the agency as well as private parties may well have become

committed to the previously chosen course of action." *Id*. at 1023 (again quoting *Marsh*, 872

F.3d at 500). Thus, while a new EIS "may bring about a *new* decision, . . . it is that much less likely to bring about a *different* one. It is far easier to influence an initial choice than to change a mind already made up." *Id*. (emphases original).

Before the TRO expired, Judge Simon held two days of evidentiary hearings. Following those hearings, he entered a preliminary injunction in mid-July 2019 that prevented most grazing on the Mud Creek allotment in 2019 and allowed only minimal grazing on the Hardie Summer allotment that year. *See generally Bernhardt II* (preliminary injunction limiting grazing in 2019).[2] Judge Simon again determined that the permitted grazing would cause irreparable harm to sage-grouse:

> The Court considers the known damage caused by livestock, risk to nests, hens, and chicks in the next few months, fragile state of the Mud Creek lek, importance of the remaining sage-grouse habitat on the Hardie Summer allotment after the 2006 fire, fact that the allotments contain areas designated as [Priority Habitat Management Areas] and [General Habitat Management Areas], and fact that a single grazing season with too much grazing is likely to eliminate the ecological gains of the last five years on the Hardie Summer allotment. In light of these factors, Plaintiffs have shown likely irreparable harm to sage-grouse and their habitat from the grazing authorized in the Permit.

*Bernhardt II*, 392 F. Supp. 3d at 1256. Judge Simon also held that "the riparian areas of the Hardie Summer allotment are likely to face irreparable harm if the permitted grazing is allowed to commence." *Id*. at 1257. In light of WWP's showing of irreparable harm to sage-grouse and redband trout, Judge Simon once again found WWP had shown a likelihood of irreparable harm from the Bureau's NEPA violations. *Id*. at 1259.

In December 2019, the Court granted WWP's motion for summary judgment and vacated Secretary Zinke's decision, holding that the Secretary had improperly directed the Bureau to

---

[2] As explained in WWP's Complaint, HRI nevertheless abused its limited grazing privileges that year. Compl. ¶¶ 77–86.

renew HRI's permit without finding that HRI had the mandatory satisfactory record of performance required to hold a grazing permit. *Bernhardt III*, 428 F. Supp. 3d at 354. In March of 2020, the Bureau announced yet another opportunity for livestock operators to apply for grazing privileges on the Bridge Creek allotments.[3]

The Bureau began the NEPA process to consider a new grazing decision for the allotments in late 2020, by mailing a scoping letter to interested publics. Compl. ¶ 22. A month later, on December 8, 2020, the Bureau issued a draft "Bridge Creek Area Allotment Management Plan and Environmental Assessment" ("AMP" and "EA"). *Id.* ¶ 5. In an unusually truncated review, the agency allowed only eight business days for public comment on the draft documents and purported to incorporate and respond to all comments received within an additional eight business days. *Id.* The Bureau issued a proposed Decision on December 31, 2020. *Id.* ¶ 6. But rather than allowing for the full public protest period provided for in its regulations, the Bureau cut off the protest period on Friday, January 15, 2021. *Id.* ¶¶ 97–103. The Bureau purported to resolve 160 separate protests in a single business day, and then-Secretary Bernhardt issued a Final Decision to grant grazing privileges to HRI on January 19, 2021—the last full day of the Trump Administration. *Id.* ¶¶ 105–06. Some members of the public, including plaintiff Oregon Natural Desert Association, submitted timely protests after that date (because the protest period was still open according to the Bureau's regulations), but the agency never considered them.

On February 25, 2021, WWP sued, alleging violations of the Federal Land Policy and Management Act ("FLPMA"), NEPA, the Steens Mountain Cooperative Management and

---

[3] *See* News Release (Mar. 25, 2020) available at https://eplanning.blm.gov/public_projects/nepa/1504684/20015184/250020325/Official_Press_Release.pdf.

Protection Act of 2000 ("Steens Act"), and the Administrative Procedure Act ("APA"). WWP's first claim for relief challenged the Decision for violating the Bureau's regulations by unlawfully truncating the protest period. *See* Compl. ¶¶ 109–21. WWP further alleged that the Bureau had again shirked its duties under NEPA and the APA by developing the EA and FONSI without adequate public participation; failing to consider restoration alternatives; failing to take a hard look at sensitive resources including sage-grouse, redband trout, cultural resources, and wilderness; and failing to prepare a detailed EIS in light of potentially significant impacts, among other issues. Compl. ¶ 135. Just as it had in the first case, WWP also argued the Bureau had violated FLPMA and the APA by failing to comply with land-use plan requirements to protect the greater sage-grouse. *Id*. ¶¶ 137–41. Finally, WWP claimed that the Bureau violated the Steens Act by failing to protect the "long-term ecological integrity" of the CMPA as required by the Act and by incorrectly interpreting the Steens Act's singular purpose as also including "promoting viable and sustainable grazing operations." *Id*. ¶¶ 142–47.

    In response to WWP's litigation, the Bureau issued a notice "rescinding" the Decision the next day. *See* Defs.' Exh. B (ECF 21-2). The Notice of Rescission acknowledged the Bureau's violation of the agency's protest regulations: "Because the protest period had not properly concluded before the January 19 Decision was issued, I am rescinding the January 19 Decision and remanding the matter to the BLM to allow for full consideration of the timely protests received by the BLM in accordance with 43 C.F.R. subpart 4160." *Id*. However, the Notice of Rescission left the EA and FONSI intact. *See id*. (not rescinding or withdrawing the EA or the FONSI). On April 9, 2021, when the Bureau announced its intention to "offer further public involvement in the NEPA process," the Bureau again refused to disturb the EA and FONSI, leaving its option to rely upon those documents open. *See* Defs.' Exh. A (ECF 21-1). The Bureau

did not offer further public involvement for eight months. Despite the directive in the Notice of Rescission, the Bureau to date has never responded or otherwise yet indicated that it has considered the timely protests it previously ignored in issuing its rushed decision a year ago.

Finally, on December 3, 2021, the Bureau released an announcement inviting public comment for a potential EIS to further consider how to manage the Bridge Creek allotments. Notice of Intent To Prepare the Bridge Creek Area Allotment Management Plans Environmental Impact Statement in the Andrews Field Office, Burns District, Oregon, 86 Fed. Reg. 68,682 (Dec. 3, 2021). The EA and FONSI continue to color the NEPA process: the Bureau's announcement states that "[t]he alternatives will consider issuance of 10-year grazing permits to up to three applicants and approval of four AMPs that outline seasonal grazing systems, grazing utilization thresholds, monitoring, and range developments"—actions that repeat some of the flaws of the existing EA identified by WWP in its Complaint. *Id*. There is no indication that the Bureau will consider *not grazing*—a reasonable alternative given the fragile and damaged state of the lands and resources at issue and the statutory mandate to protect "long-term ecological integrity." The Bureau now contends that because it has announced an intention to prepare an EIS, WWP's case is moot. To date, the Bureau has not actually issued an EIS for the public to review and comment upon, or a new decision.

## LEGAL BACKGROUND

Mootness is a jurisdictional issue requiring the Court to determine whether a case or controversy exists under Article III of the Constitution. *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

"[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307–08.

As such, the critical mootness inquiry is whether "it is impossible for a court to grant any effectual relief" to the prevailing party. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). "The party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide." *Johanns*, 450 F.3d at 461; *see also S. Or. Barter Fair v. Jackson Cnty., Or.*, 372 F.3d 1128, 1134 (9th Cir. 2004) (party asserting mootness bears burden of proof). The burden to establish mootness is heavy. "[A] case is not moot where *any* effective relief may be granted." *Johanns*, 450 F.3d at 461 (emphasis in original). For example, where a declaratory judgment "would nonetheless provide effective relief, an action is not moot." *Id*. at 462.

There are also two well-established exceptions to the mootness doctrine. First, "the voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox*, 567 U.S. at 307. Second, where an action is "capable of repetition yet evading review" due its short duration, a case challenging conduct that has already occurred is not moot. *See Brandau*, 578 F.3d at 1067 (recognizing exception).

## ARGUMENT

The Bureau has not carried its heavy burden of proving mootness here. The Bureau contends that it has so completely unwound the Decision by issuing the Notice of Rescission and later announcing an intention to complete a potential EIS sometime in the future that WWP has no remaining case. But the Bureau's voluntary cessation of the challenged conduct by "rescinding" the Decision cannot render the case unreviewable, especially because it occurred only in response to litigation. The Bureau could issue an identical or substantially similar

Decision at any time, either based on the existing EA and FONSI or following the "additional" (importantly: not "new") process. *See* Defs.' Exh. B (stating only that "the BLM is *encouraged* to initiate any *additional* processes and opportunities for public involvement that it may determine appropriate") (emphasis added). The Bureau essentially begs the Court, and WWP, to presume that it will follow the required public process this time.

The challenged conduct here is also capable of repetition yet evading review. Although the challenged action was too short in duration to be fully litigated prior to cessation because the Bureau rescinded the Decision document the day after WWP filed its Complaint, the Bureau may issue a new unlawful decision based upon the flawed EA and FONSI. Indeed, this case marks the second time in two years that WWP has been forced—on short notice—to seek review of an unlawful decision concerning these allotments. Thus, the Court may grant relief because both exceptions to the mootness doctrine apply.

Further, WWP's injuries from the EA and FONSI, which the Bureau has not rescinded, are not moot. The flaws of those documents continue to taint the "additional" analysis. In its Complaint, WWP asks the Court to "[o]rder, declare, and adjudge that the Bridge Creek Area AMP and EA and associated FONSI violated NEPA and the APA," to vacate the AMP, FONSI and "other decisions named herein" and to "[e]njoin the Bureau from allowing grazing on the Bridge Creek allotments unless and until Defendants have issued a final decision in compliance with the public process and substantive requirements of FLPMA, NEPA, the Steens Act, and the APA." Compl. at 46. If the Court granted such relief and vacated the EA and FONSI, the agency could not rely on those documents to support a new Decision and would be less likely to repeat the same mistakes in a new environmental analysis.

The Court can grant effective declaratory and injunctive relief for WWP's ongoing injuries and the case or controversy here remains live.

I.      **Exceptions To The Mootness Doctrine Apply And The Bureau Has Not Carried Its Heavy Burden Of Proving Otherwise.**

A.   **The Bureau's voluntary cessation of its Decision through the Notice of Rescission does not moot the case.**

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox,* 567 U.S. at 307. The "heavy burden of persua[ding]" the Court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness—here, the Bureau. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). In NEPA cases, courts are especially concerned with the ways in which an agency can structure projects to "ignore the requirements of NEPA . . . and then hide behind the mootness doctrine." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001).

Thus, a defendant's voluntary cessation of offending conduct will only moot a case where "(1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have *completely and irrevocably* eradicated the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1997) (emphasis added, internal alteration omitted). In addition, the Ninth Circuit holds that a case is not moot where a defendant's cessation of offensive conduct "[has] arisen because of the litigation." *Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) (citation omitted), *overruled in part on other grounds by United States v. Hovsepian*, 359 F.3d 1144, 1161 n.13 (9th Cir. 2004) (en banc).

This case is not moot because even though the Bureau "rescinded" the Decision after WWP filed its Complaint, the Bureau's EA and FONSI continue to taint the announced "additional" NEPA process while leaving the door open for the Bureau to issue an identical or substantially similar decision at any time. Although the Bureau now says it plans to complete an EIS and new decision for the allotments, the agency has not yet even issued a draft EIS for public review, let alone a final EIS and new, lawful decision. There is no guarantee the Bureau will complete the promised EIS: In *Oregon Natural Desert Association v. Singleton*, for example, this Court granted injunctive relief more than 20 years ago ordering exclusion of livestock grazing from areas along the Owyhee Wild and Scenic Rivers and retaining jurisdiction until completion of a new EIS; yet the Bureau has *still* not completed the required EIS. 75 F. Supp 2d 1139, 1153 (D. Or. 1999); *ONDA v. Singleton*, No. 3:98-cv-97-AA (annual reports in that case showing EIS still not complete). The Bureau has attempted to jettison even much more formal commitments to NEPA processes. *See, e.g.*, *W. Watersheds Proj. v. Bernhardt*, 519 F. Supp. 3d 763 (D. Idaho 2021) (holding unlawful the Bureau's decision to cancel a mineral withdrawal for 10 million acres of federal lands identified as "sagebrush focal areas" promised by the 2015 Approved Greater Sage-grouse Resource Management Plan Amendments).

The mere statement by the Bureau of its "intent" to prepare an EIS provides no certainty that the offending behavior will not recur—especially because the challenged NEPA analysis, the 2021 EA and FONSI, has not been withdrawn. Indeed, the Bureau makes no effort to persuade the Court that it will *not* issue an identical decision or abandon the EIS process. NEPA requires agencies to prepare a detailed EIS if a proposed action may "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(2)(C). An agency may prepare a less detailed EA, instead of an EIS, only if it determines that the project or action will have "no

significant impact" on the environment. *See Nat'l Parks & Conservation Ass'n v. Babbitt*, 241

F.3d 722, 730 (9th Cir. 2001) (discussing criteria for the two types of analyses). But here, the

Bureau so far refuses to withdraw its existing determination that grazing on the Bridge Creek

allotments will have "no" significant impact on the environment.

Instead, it continues to leave the EA and FONSI in place to color the new NEPA process

or support a new decision. *See Mass. v. Watt*, 716 F.2d 946, 952–53 (1st Cir. 1983) (Breyer, J.)

("Once large bureaucracies are committed to a course of action it is difficult to change that

course—even if new, or more thorough, NEPA statements are prepared."); *see also Nat'l*

*Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. 3:01-cv-0640-SI, 2017 WL 1829588, at *12–

13 (D. Or. Apr. 3, 2017), *aff'd in part, appeal dismissed in part*, 886 F.3d 803 (9th Cir. 2018)

(recognizing this "bureaucratic steamroller" causes irreparable harm in NEPA cases). The

Bureau's failure to withdraw the EA and FONSI here raises the question of whether "the Federal

Defendants [can] now be trusted to take the clear-eyed hard look at the . . . proposal's

consequences required by the law, or will a new EA be a classic Wonderland case of first-the-

verdict, then-the-trial?" *Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir. 2000). To prevent a

previous NEPA process from influencing a what should be a truly new and not merely

"additional" NEPA process, the Ninth Circuit has previously "require[d] that it be done under

circumstances that ensure an objective evaluation free of the previous taint." *Id.*; *see also Native*

*Village of Nuiqsut v. BLM*, 9 F.4th 1201, 1210 (9th Cir. 2021) (where new environmental report

borrows heavily from previous report, agency is effectively relying on the previous report for

purposes of capable of repetition analysis).

Indeed, the Bureau seems poised to repeat its past errors in a third unlawful decision. The

Federal Register notice states an intent to "consider issuance of 10-year grazing permits to up to

three applicants and approval of four AMPs that outline seasonal grazing systems, grazing
utilization thresholds, monitoring, and range developments"—but never indicates that the Bureau
will consider *not grazing* this supposedly protected area. 86 Fed. Reg. at 68,682. The agency's
Federal Register notice shows no intention to consider vegetation and habitat restoration in the
new process, craft its decision around its management mandate to preserve the ecological
integrity of Steens mountain, or otherwise address the significant problems with the EA and
FONSI WWP identified in its Complaint. *See* Compl. ¶¶ 130–47 (third through fifth claims for
relief). The writing is on the wall. The Bureau has not eradicated the effects of its violation
"completely," because the EA and FONSI are in place and continue to taint fresh
decisionmaking, or "irrevocably," since the Bureau may abandon the EIS process and issue a
decision based upon them at any time. *Norman-Bloodsaw*, 135 F.3d at 1274.

      Finally, the Bureau only rescinded the Decision in response to WWP's litigation. Even
though the Bureau had been on notice of the multiple ways in which it violated the law,
including that it had violated its own regulations concerning the public protest period, it issued
the Notice of Rescission only after WWP filed its Complaint in this matter. *See* Defs.' Exh. B at
n. 1 ("Several protesters contended that the protest period offered by the Department was
inadequate, and others submitted protests after the issuance of the January 19 Decision.")
WWP's Complaint specifically raised the Bureau's multiple violations with respect to the protest
period. Compl. ¶¶ 96–104, 110–21. The Bureau now points to the Notice of Rescission to argue
that it has "acted to address or cure" WWP's injuries from the truncated protest periods. Mot. to
Dismiss at 9. The Bureau cannot argue that there is no relationship between WWP's Complaint
and its rescission of the Decision out of one side of its mouth while arguing that it has acted to
cure the injuries asserted in that Complaint out of the other.

WWP has a strong interest in making sure that grazing does not prematurely commence on these fragile and recovering allotments, which, as the Bureau has acknowledged elsewhere, have "been largely ungrazed since 2014." 86 Fed. Reg. at 68,682. WWP's members are committed to preserving the nascent gains in ecological recovery that have occurred in the absence of previously ongoing damage from livestock. As Judge Simon recognized, even a single season of grazing could undo those ecological gains. *See Bernhardt II*, 392 F. Supp. 3d at 1256. But the Bureau has refused to withdraw the current NEPA analysis in the EA, apparently intends to authorize further grazing following the "additional" process recently noticed in the Federal Register, and, in fact, could authorize so-called "Temporary Non-Renewable" grazing at any time, even before completing any additional or new process. *See* 43 C.F.R. § 4110.3–1(regulations regarding temporary nonrenewable use).

Not only *can* the Court still grant relief, but that relief is important to "ensure that the Secretary is not permitted to once again ignore the law and issue a decision allowing livestock grazing on the Bridge Creek allotments and Steens Mountain without first properly involving the public and fully considering the environmental consequences of that decision." Compl. ¶ 10. The declaratory relief WWP seeks would "prohibit[ ] [the agency] from continuing to violate the law." *Johanns*, 450 F.3d at 462–63. The injunctive relief WWP seeks remains crucial to ensure that no damaging livestock grazing occurs on the Bridge Creek allotments unless and until the agency actually completes the promised process, as the *Singleton* example illustrates. WWP still has concrete interests in the outcome of this litigation and the case is not moot. *See Knox*, 567 U.S. at 307–08.

**B.  The Bureau's actions also are capable of repetition yet evading review.**

Where, as here, a violation is capable of repetition, yet the party's actions evade review, the mootness doctrine does not apply. *Brandau*, 578 F.3d at 1067; *see also Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (per curiam) ("An exception exists, however, for controversies that are capable of repetition, yet evading review.") (internal quotation omitted). The "capable of repetition yet evading review" exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (internal quotation marks and citation omitted); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997) (reiterating the criteria).

Both are true here. The duration of the action was too short to be fully litigated. The Bureau withdrew the Decision at issue here the day after WWP filed its Complaint—the business day before HRI would have been permitted to release its cattle onto the allotments. *See* Compl. ¶ 107 (table showing turnout was authorized on March 1, just days after the February 26, 2021 Notice of Rescission was issued). The same was true in the previous case, where WWP was not able to prevent all grazing on the Bridge Creek allotments because the Bureau refused to provide it a copy of the decision at issue there until after cattle had been released. *See Bernhardt I*, 391 F. Supp. 3d at 1018–19 (discussing timing of litigation relative to turnout). These actions are too short in duration to permit full judicial review. *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012) (Recognizing that "we have repeatedly held that similar actions lasting only one or two years evade review" (listing cases)).

There is also a reasonable expectation that WWP will be subject to these actions again. The Bureau points repeatedly to its "intent to engage in additional NEPA process and public

review." *See, e.g.*, Mot. to Dismiss at 2. But, that has not happened yet—the Bureau has neither

followed through on its promise to fully consider the protests of the EA, FONSI and rescinded

Decision nor issued a new decision after completing a lawful public process. And the Bureau has

not clarified how it will calculate protest periods in situations like this where many different

members of the public all receive notice of the agency's proposed decisions at different times.

*See* Compl. ¶¶ 97–103, 110–21. The Bureau has only committed in very general terms to address

its failure to comply with the required public process, not to address the substantive violations of

NEPA, FLPMA, and the Steens Act WWP identified in its third, fourth, and fifth claims for

relief. *See* Defs.' Exhs. A & B. Since the Bureau will not "pre-decide" the outcome of its NEPA

process, refuses to withdraw the flawed EA and FONSI, and has never stated an intent to

consider *not grazing* the Bridge Creek allotments, the agency cannot carry its heavy burden of

showing WWP's case is moot.

Until the Bureau has actually completed a new EIS and decision, the EA and FONSI will

still be in effect and the Bureau could abandon the EIS process and issue a new decision based

on the existing EA and FONSI at any time. This is not a case where the Bureau's EA and FONSI

have been superseded and the agency will rely on a new analysis for future decisions. *See*

*Nuiqsut*, 9 F.4th at 1210 (discussing *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries*

*Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995)). Since BLM may use the same environmental report

in approving future actions, WWP's case is not moot. *See id.* (If the "agency will use that same

report in approving a future project…then the case is not moot."). Further, neither the Bureau,

the Court, nor WWP will know whether the Bureau has complied with the public process

requirements of NEPA, FLPMA and their implementing regulations until the new EIS and

decision are complete. The moment the Bureau issues a new decision, lawful or not, cattle could

be released on the land. *See Bernhardt I*, 391 F. Supp. 3d at 1018–19 (discussing effect of

WWP's six-week delay in filing Complaint). It is reasonably likely that WWP will be subject to

yet another unlawful decision, rendered without adequate public process or time for WWP to

prevent it from going into effect, as has happened twice before. As before, that would force

WWP to seek emergency injunctive relief from this Court.

## II.   WWP's Case Is Not Moot Because The Court Can Provide Effective Relief By Vacating The EA and FONSI.

The Bureau claims that because former Secretary Bernhardt's Decision has been

rescinded, any procedural injuries WWP may assert are injuries "*in vacuo*." Mot. to Dismiss at 8.

The Bureau misunderstands procedural injury. In its Complaint, WWP specifically challenged

and sought relief from the EA and FONSI, which are reviewable final agency action that, WWP

established, adversely affect its concrete interests. Compl. ¶¶ 10, 130–47, Prayer for Relief.

Because WWP's concrete interests are affected, its procedural injury from the Bureau's NEPA

violations in issuing the EA and FONSI—which is ripe for review when the NEPA violation

occurs—is not an injury "*in vacuo*." The Court can provide effective relief by vacating the

unlawful the EA and FONSI and enjoining the Bureau from authorizing grazing until it has

completed a lawful environmental review and therefore the case is not moot.

### A.  The EA and FONSI are reviewable under the Administrative Procedure Act.

Under the APA, an action is final if it (1) "mark[s] the consummation of the agency's

decisionmaking process," and (2) is "one by which rights or obligations have been determined,

or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *see

also Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982–89 (9th Cir. 2006) (examining

"final agency action" under APA). The Ninth Circuit has acknowledged that issuance of a

FONSI consummates an agency's decision-making process under NEPA and constitutes final

agency action. *See Rattlesnake Coal. v. U.S. Envt'l Prot. Agency*, 509 F.3d 1095, 1104 (9th Cir. 2007) ("an agency's decision not to issue an EIS [through a FONSI] concludes the agency's procedural inquiry into the environmental impact of a proposed project and therefore constitutes a final agency action"); *Te-Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 608 F.3d 592, 598 (9th Cir. 2010) ("[W]e review the modified DR/FONSI issued by the BLM State Director, which is the final agency action.") Other circuits agree. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 815–16 (8th Cir. 2006) ("[t]he Corps' decision to issue a FONSI was the culmination of the agency's NEPA decision-making"); *Cure Land, LLC v. U.S. Dep't of Agric.*, 833 F.3d 1223, 1230–32 (10th Cir. 2016) (issuance of a FONSI culminates the NEPA); *Sw. Williamson Cnty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999) ("Issuance of a FONSI is final agency action.")

The Bureau's EA and FONSI here therefore represent final agency action that is reviewable by this Court independent of the Decision. 5 U.S.C. § 706(2)(A), (D) (courts "shall . . . hold unlawful and set aside *agency action, findings, and conclusions* found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] (D) without observance of procedure required by law") (emphasis added). They remain in place, even though the Bureau could have withdrawn them any time in the eleven months since WWP filed this lawsuit. WWP specifically challenges the EA and FONSI. *See* Compl. ¶¶ 10, 23,130–36. It requests that the Court "Order, declare, and adjudge that the Bridge Creek Area AMP and EA and associated FONSI violated NEPA and the APA"; "Issue an order vacating and remanding the Secretary's decision, the grazing permit and preference, the AMP, and the FONSI, and/or other decisions named herein;" and "Enjoin the Bureau from allowing grazing on the Bridge Creek allotments unless and until Defendants have issued a final decision in

compliance with the public process and substantive requirements of FLPMA, NEPA, the Steens Act, and the APA." Compl. at 46. The Court can provide the requested relief. Although the Bureau is correct that its rescission of the former Secretary's Decision document provided WWP *some* of the relief requested in the Complaint, WWP still has a concrete interest in the outcome of this litigation, and the case or controversy here remains live.

Moreover, although the Bureau correctly acknowledges (Mot. to Dismiss at 9) that the appropriate relief in this case, should WWP prevail, would be vacatur of the challenged decision, the agency fails to acknowledge that the APA directs courts to set aside (vacate) not just "agency action" but also "findings" and "conclusions" associated with that action that are arbitrary and capricious. 5 U.S.C. § 706(2)(A). Even where an agency voluntarily remands an unlawful rule or Decision, as it does in essence here, a court must still vacate that rule or decision unless vacatur would risk environmental harm or the agency could lawfully adopt the same rule on remand after following the correct procedure. *See Pasqua Yaqui Tribe v. EPA*, No. CV-20-266-TUC-RM, 2021 WL 3855977, *4 (D. Ariz. Aug. 30, 2021) (discussing *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015), one of this circuit's leading cases on vacatur). In *Pasqua Yaqui Tribe*, for instance, the court vacated an EPA Clean Water Act rule because it involved "fundamental substantive flaws" that could not be remedied without replacing the rule and remanding *without* vacatur would "risk serious environmental harm." *Id*. at 9.

The same is true here. Assuming, as WWP has alleged in its complaint, that the Decision, EA and FONSI are unlawful under FLPMA, NEPA, the Steens Act and the APA, and that the Bureau could proceed based on a flawed environmental review unless these final agency actions, findings and conclusions are vacated, then, without vacatur, there is a serious risk that nearly a decade of ecological recovery will be lost.

**B.  WWP's injuries from the EA and FONSI are not injuries "*in vacuo.*"**

The Bureau does not address WWP's injuries from the EA and FONSI. Instead, it

broadly proclaims that procedural "interests standing alone do not present a justiciable case or

controversy now that the grazing decision that they challenged has been rescinded," and cites

*Summers v. Earth Island Institute* to suggest that all such injuries are injuries "*in vacuo.*" Mot. to

Dismiss at 8–9. But *Summers* does not stand for the proposition that plaintiffs may *never* suffer

injury from a procedural violation standing alone, as the Bureau suggests. 555 U.S. 488 (2009)

(discussing procedural injury). To the contrary, it is well established that "[a] person with

standing who is injured by a failure to comply with the NEPA procedure may complain of that

failure at the time the failure takes place. . . ." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 737 (1998). Indeed:

> The person who has been accorded a procedural right to protect his concrete
> interests *can assert that right without meeting all the normal standards for
> redressability and immediacy*. Thus, under our case law, one living adjacent to the
> site for proposed construction of a federally licensed dam has standing to challenge
> the licensing agency's failure to prepare an environmental impact statement, even
> though he cannot establish with any certainty that the statement will cause the
> license to be withheld or altered, *and even though the dam will not be completed
> for many years*.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992) (emphases added). Under the Bureau's

reading of the case law, the plaintiff's injury from the dam in the example from *Lujan* would be

an injury "*in vacuo.*"

Rather, *Summers* requires that in order to assert a procedural violation, a plaintiff must

show harm to its concrete interests. 555 U.S. at 497 (discussing concrete interests of plaintiffs).

In NEPA cases, the concrete interests test requires "a "geographic nexus" between the individual

asserting the claim and the location suffering an environmental impact." *Cantrell,* 241 F.3d at

679. In essence, this test requires a plaintiff to prove that they are "among the injured." *See*

*Lujan*, 504 U.S. at 563 (injury in fact test requires plaintiff to show that they are among the injured).

WWP met this standard when it alleged that its members use and enjoy public lands on and around the Bridge Creek allotments on Steens Mountain, engaging in activities like viewing sage-grouse and visiting wilderness lands in the area. Compl. ¶ 19. WWP described that its members have been upset by witnessing habitat degradation due to years of Bureau-authorized livestock grazing in these areas. *Id*. Moreover, WWP described how it was "directly injured by the procedural and substantive" FLPMA, NEPA, Steens Act, and APA violations alleged in its Complaint, "which are redressable by this Court." *Id*. ¶ 22. At this stage, the Court must presume that these "general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Injury to WWP's concrete interests thus occurred "when the allegedly inadequate [NEPA analysis] was promulgated." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1071 (9th Cir. 2002). WWP's injury is not an injury "*in vacuo*" and the Bureau has failed to satisfy its heavy burden to prove mootness. *Laidlaw*, 528 U.S. at 189 ("heavy burden").

**CONCLUSION**

For the reasons described above, this case is not moot, the Court may grant effective relief, and the Court should deny the Bureau's motion to dismiss.

DATED this 12th day of January, 2022.　　　Respectfully submitted,

s/ Talasi B. Brooks

_____

Talasi B. Brooks (*Pro Hac Vice*)
Western Watersheds Project

s/ Peter M. Lacy

_____

Peter M. ("Mac") Lacy
Oregon Natural Desert Association

Attorneys for Plaintiffs