TODD KIM
Assistant Attorney General

SHANNON BOYLAN
ARWYN CARROLL
United States Department of Justice
Environment and Natural Resources Division
150 M St NE
Washington, DC 20002
Tel: (202) 598-9584 / Fax: (202) 305-0506
shannon.boylan@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT, OREGON NATURAL DESERT ASS'N, WILDEARTH GUARDIANS, and CENTER FOR BIOLOGICAL DIVERSITY**, | Case No. 2:21-cv-00297-HL |
| Plaintiffs, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| **v.** | |
| **SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR and BUREAU OF LAND MANAGEMENT**, | |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................ 2

    I.     Plaintiffs' Claims Are Moot............................................................. 2

          A.     The EA and FONSI are not reviewable on their own. ............... 3

          B.     Plaintiffs fail to demonstrate any cognizable injury resulting from the EA and FONSI. ....................................................................... 6

    II.    No Exception to Mootness Applies. ................................................ 7

          A.     The voluntary cessation exception does not apply. ................... 8

          B.     The capable of repetition yet evading review exception does not apply............................................................................................. 13

CONCLUSION..................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................. 6

*Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*,
    941 F.3d 1195 (9th Cir. 2019) ........................................................................... 8, 13

*Bennett v. Spear*,
    520 U.S. 154 (1997)................................................................................................. 3

*Californians for Alternatives to Toxics v. Troyer*,
    No. CIV. S-05-1633FCDKJM, 2006 WL 464084 (E.D. Cal. Feb. 27, 2006) .......... 2, 10, 11, 15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).................................................................................................. 13

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982)................................................................................................. 8

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990)................................................................................. 9

*Com. of Mass. v. Watt*,
    716 F.2d 946 (1st Cir. 1983)................................................................................... 12

*Ctr. for Biological Diversity v. Lohn*,
    511 F.3d 960 (9th Cir. 2007) .................................................................................. 15

*Ctr. for Food Safety v. Vilsack*,
    No. C 10-04038 JSW, 2011 WL 13152739 (N.D. Cal. Apr. 14, 2011).................... 14

*Cure Land, LLC v. U.S. Dep't of Agric.*,
    833 F.3d 1223 (10th Cir. 2016) ............................................................................... 5

*Feldman v. Bomar*,
    518 F.3d 637 (9th Cir. 2008) ................................................................................... 2

*Forest Guardians v. U.S. Forest Serv.*,
    329 F.3d 1089 (9th Cir. 2003) ................................................................................. 9

*Friends of the Earth v. Laidlaw Env't. Servs.*,
    528 U.S. 167 (2000)................................................................................................. 8

*Leatherback Sea Turtle v. Nat'l Marine Fisheries Serv.*,
    No. 99-00152 DAE, 1999 WL 33594329 (D. Haw. Oct. 18, 1999).......................... 2

*Lee v. Schmidt-Wenzel*,
    766 F.2d 1387 (9th Cir. 1985) ............................................................................... 14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................ 7

*Metcalf v. Daley*,
  214 F.3d 1135 (9th Cir. 2000) ........................................................................ 12

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  No. 3:01-CV-0640-SI, 2017 WL 1829588 (D. Or. Apr. 3, 2017) .................. 11, 12

*Nome Eskimo Community v. Babbitt*,
  67 F.3d 813 (9th Cir.1995) ............................................................................... 8

*Oregon Nat. Res. Council v. Grossarth*,
  979 F.2d 1377 (9th Cir. 1992) ........................................................................... 9

*Plan. & Conservation League v. U.S. Bureau of Reclamation*,
  No. C 05-3527 CW, 2006 WL 8459848 (N.D. Cal. May 15, 2006)................... 2

*Protecting Arizona's Res. & Children v. Fed. Highway Admin.*,
  No. CV-15-00893-PHX-DJH, 2015 WL 12618411 (D. Ariz. July 28, 2015)....... 11

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) .......................................................................... 16

*Pub. Utilities Comm'n of State of Cal. v. FERC*,
  100 F.3d 1451 (9th Cir. 1996) ........................................................................... 8

*Rattlesnake Coal. v. U.S. E.P.A.*,
  509 F.3d 1095 (9th Cir. 2007) ........................................................................... 4

*Schmier v. U.S. Ct. of Appeals for Ninth Cir.*,
  279 F.3d 817 (9th Cir. 2002) ............................................................................. 6

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  446 F.3d 808 (8th Cir. 2006) ............................................................................. 5

*Spencer v. Kemna*,
  523 U.S. 1 (1998)............................................................................................. 14

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009)...................................................................................... 6, 7

*Sze v. I.N.S.*,
  153 F.3d 1005 (9th Cir. 1998) ......................................................................... 10

*Te-Moak Tribe of W. Shoshone of Nevada v. U.S Dep't of the Interior*,
  608 F.3d 592 (9th Cir. 2010) ............................................................................. 4

*Tri-Valley Citizens Against A Radioactive Env't v. Dep't of Energy*,
  No. C 92-0989 BAC, 1993 WL 467934 (N.D. Cal. Nov. 5, 1993) ...................... 15

*United States v. Hovsepian*,

359 F.3d 1144 (9th Cir. 2004) ................................................................................. 10

*W. Watersheds Proj. v. Bernhardt*,
   391 F. Supp. 3d 1002 (D. Or. 2019) ................................................................... 15

*W. Watersheds Proj. v. Bernhardt*,
   392 F. Supp. 3d 1225 (D. Or. 2019) ................................................................... 15

*W. Watersheds Proj. v. Bernhardt*,
   428 F. Supp. 3d 327 (D. Or. 2019) ..................................................................... 15

*Wilderness Soc., Inc. v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) ............................................................................. 6

**Statutes**

5 U.S.C. § 704 .......................................................................................................... 4

**Regulations**

43 C.F.R. § 4130.2(d) ............................................................................................. 16

43 C.F.R. § 4160.1 ................................................................................................. 10

43 C.F.R. § 4160.2 ................................................................................................. 10

43 C.F.R. § 4160.3 ................................................................................................. 10

43 C.F.R. § 4160.4 ................................................................................................. 10

43 C.F.R. §§ 4160.1-4160.4 .................................................................................. 15

**Other Authorities**

86 Fed. Reg. 68,682 (Dec. 3, 2021) ................................................................. 5, 13

**INTRODUCTION**

Plaintiffs' claims have been mooted by the Department of the Interior's ("Interior") rescission of the January 19, 2021, decision ("Decision") issued by former-Secretary Bernhardt on his last day in office. The now-rescinded decision approved the Bridge Creek Allotment Management Plan ("AMP") and authorized the Bureau of Land Management ("BLM") to issue a ten-year grazing permit to Hammond Ranches, Inc. After the rescission, BLM issued a scoping notice initiating a new decision-making process that will include preparation of an Environmental Impact Statement ("EIS") to determine the environmental effect of management actions on the Bridge Creek allotments under the National Environmental Policy Act ("NEPA").

No live controversy exists in this case because the challenged Decision has been rescinded, no grazing is currently authorized on the Bridge Creek allotments, and no grazing will be authorized before BLM completes its new NEPA process. Furthermore, Plaintiffs' claims, if any, challenging the Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") on their own are not justiciable because, in this case, the EA and FONSI are not final agency actions subject to review under the APA and Plaintiffs' have alleged no injury in fact stemming from these documents. And to remove all doubt regarding the mootness of this case, Defendants intend to formally withdraw the FONSI and will inform the Court when they have done so. Finally, no exception to the mootness doctrine applies because, among other reasons discussed below, Plaintiffs have failed to demonstrate that the actions challenged in this case are reasonably likely to recur. Therefore, Defendants respectfully request that the Court dismiss this case as moot.

## ARGUMENT

### I.    Plaintiffs' Claims Are Moot.

Plaintiffs' claims have been mooted by the Department of the Interior's decision to rescind the grazing decision challenged in this case. "[T]he Ninth Circuit has held that a case may become moot when the challenged agency decision at issue is rescinded, superceded or has expired." *Californians for Alternatives to Toxics v. Troyer*, No. CIV. S-05-1633FCDKJM, 2006 WL 464084, at *3 (E.D. Cal. Feb. 27, 2006). As explained in Defendants' Motion to Dismiss, ECF No. 21, that is precisely what happened here—Plaintiffs' claims challenging the January 19, 2021 Decision are moot because that Decision has been rescinded. Just to be clear—no grazing is currently allowed, a point that Plaintiffs assiduously ignore. Therefore, unlike other cases in which the Ninth Circuit has found that a live controversy existed due to the continued potential for harm to Plaintiffs' interests, no such potential exists here and therefore the case is moot. *See Feldman v. Bomar*, 518 F.3d 637, 642-43 (9th Cir. 2008) (holding that a NEPA claim was moot where the plaintiffs faced no potential for continued harm to their interests).

In addition, Plaintiffs cannot rely on the existence of the EA and FONSI to avoid mootness because those documents no longer support any actual decision affecting Plaintiffs' interests and a claim cannot proceed based only on alleged procedural injuries. Moreover, even if such a claim could proceed, it too would have been mooted by BLM's initiation of a new NEPA process to support a future grazing decision. *See Leatherback Sea Turtle v. Nat'l Marine Fisheries Serv.*, No. 99-00152 DAE, 1999 WL 33594329, at *14 (D. Haw. Oct. 18, 1999) (finding plaintiffs' request to order agency to prepare an EIS moot where defendants had voluntarily initiated preparation of an EIS); *Plan. & Conservation League v. U.S. Bureau of Reclamation*, No. C 05-3527 CW, 2006 WL 8459848, at *2 (N.D. Cal. May 15, 2006)

(dismissing NEPA challenge as moot where defendant agency terminated construction contract and committed to prepare an EIS). Further, they can show no actual injury stemming from the EA and FONSI now that the grazing decision has been rescinded. Accordingly, as discussed below, Plaintiffs' desire to obtain a merits ruling regarding the EA and FONSI is not a sufficient ground to avoid mootness.

### A.    The EA and FONSI are not reviewable on their own.

The EA and FONSI are no longer justiciable due to the rescission of the grazing decision. Plaintiffs argue that the FONSI itself is a final agency action warranting review of the EA and FONSI. They are mistaken. They rely on a line of cases regarding whether an agency decision is final for APA purposes and therefore ripe for review. But those cases only address when judicial review may begin—not when judicial review may no longer occur because an action has become moot. Plaintiffs cite no authority for the proposition that a court may reach back to evaluate NEPA claims after the decision relying on such NEPA documents has been rescinded. In any event, they are wrong that the FONSI alone was a final agency action.

In order to be a final agency action, an action "must mark the consummation of the agency's decisionmaking process" and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citation and quotations omitted). The FONSI here satisfied neither requirement. BLM's Decision, not the FONSI, was the consummation of the decision-making process and determined legal rights, *i.e.*, the grazing rights that were challenged in this lawsuit. *See* January 19 Notice of Final Decision, Defs.' Mot. to Dismiss Ex. A (ECF No. 21-1). The FONSI was only a preliminary step in the agency's decision-making process, and under the APA, such "preliminary, procedural, or intermediate agency action[s]" are reviewable only "on

the review of the final agency action." 5 U.S.C. § 704. Therefore, the FONSI itself is not a final

agency action subject to review. Indeed, the way Plaintiffs pled their NEPA claim demonstrates

that the Decision, not the underlying EA and FONSI, was the action alleged to violate NEPA.

*See* ECF No. 1, Compl. ¶ 136 ("By basing *the January 19, 2021 Final Decision* on a flawed and

inadequate EA and FONSI, the Defendants' actions were arbitrary, capricious, an abuse of

discretion, and not in accordance with NEPA . . . .") (emphasis added). There is no basis for a

NEPA claim based on the EA and FONSI alone.

Moreover, the cases Plaintiffs rely on for the proposition that the FONSI was a final

agency action do not support their position. Plaintiffs rely on *Rattlesnake Coal. v. U.S. E.P.A.*,

509 F.3d 1095, 1104 (9th Cir. 2007), for the proposition that a FONSI may be a final agency

action. ECF No. 22, Pls.' Resp. Opposing Defs.' Mot. to Dismiss at 19-20 ("Pls.' Resp."). In that

case, the court found that the plaintiffs lacked standing, so the language Plaintiffs' cite is *dicta*.

*See Rattlesnake Coal.*, 509 F.3d at 1104. In any event, the court stated that had the plaintiffs been

able to establish standing, it would have had jurisdiction over only one of the NEPA claims

because, as to one of the challenged actions, there was "no indication in the record that the EPA

[had] adopted an EA" and the "EPA [had] not concluded its procedural inquiry into the

environmental impact of [its proposed action.]. *Id.* Similarly, here, Interior has rescinded the only

decision relying on the EA and FONSI and therefore is no longer relying on them. Moreover, it

has committed to, and is conducting, a new NEPA process for a new decision, and therefore it

has not concluded its procedural analysis of potential environmental impacts.[1]

---

[1] *Te-Moak Tribe of W. Shoshone of Nevada v. U.S Department of the Interior*, 608 F.3d 592, 598
(9th Cir. 2010), is of no assistance to Plaintiffs because final agency action was not at issue and
the court stated that the "[Decision Record]/FONSI" was the final action subject to review, not
that a FONSI could be reviewed separately from a final agency action.

Page 4 - Defendants' Reply in Support of Motion to Dismiss

Plaintiffs' citation to out of circuit cases are equally unavailing. In *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808 (8th Cir. 2006), the court held that "[t]he Corps' decision to issue a FONSI was the culmination of the agency's NEPA decision-making." *Id.* at 815-16. Even if at the time it was issued BLM's FONSI could have been considered a final agency action (which Defendants do not concede), it no longer is because BLM has reopened its NEPA process by issuing a scoping notice for the preparation of a new EIS.[2] *See* Notice of Intent To Prepare the Bridge Creek Area Allotment Management Plans Environmental Impact Statement, 86 Fed. Reg. 68,682 (Dec. 3, 2021) ("EIS Scoping Notice"). Thus, unlike in *Sierra Club*, the EA and FONSI are not the culmination of the agency's NEPA process.

Plaintiffs also rely on *Cure Land, LLC v. U.S. Dep't of Agric.*, 833 F.3d 1223, 1231 (10th Cir. 2016), but it is likewise distinguishable. In *Cure Land*, the court found that the FONSI in that case "satisfie[d] the second finality requirement because it establishes which changes to the conservation program the agency may implement immediately." *Cure Land*, 833 F.3d at 1231. The FONSI here was different because it did not establish any such legal rights or obligations— instead, rights and obligations were established in the grazing decision. That Decision no longer exists. The FONSI by itself did not allow the BLM to "implement immediately" any grazing decision on the Bridge Creek Allotments. *Cure Land*, 833 F.3d at 1231. And, in fact, the rescission of the Decision means that no grazing can occur.

In sum, Plaintiffs have failed to show that their challenges to the EA and FONSI alone

---

[2] BLM is not in the practice of separately withdrawing NEPA documents when withdrawing decisions that rely on those documents. Once a decision is withdrawn, the environmental analysis supporting the agency's decision is irrelevant unless and until the agency decides to take another action for which a NEPA analysis is required. Instead, BLM's practice is to initiate a new NEPA process to analyze the potential impacts of a new proposed action, which is precisely what BLM is doing here.

are sufficient to create a continuing live controversy.

**B.    Plaintiffs fail to demonstrate any cognizable injury resulting from the EA and FONSI.**

Even if the Court finds that the challenges to the EA and FONSI could otherwise stand on their own, the Court should not proceed to resolve those claims because Plaintiffs have not demonstrated that they have standing to bring such claims. Plaintiffs concede, as they must, "that in order to assert a procedural violation, a plaintiff must show harm to its concrete interests." Pls.' Resp. at 22 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009)). Plaintiffs assert that they have established concrete injury through declarations alleging that their "members use and enjoy public lands on and around the Bridge Creek allotments on Steens Mountain." Pls.' Resp. at 23. But while Plaintiffs may have interests in the lands that would have been grazed if grazing had continued to be authorized, they fail to show how their concrete interests are affected now that the Decision has been rescinded and no grazing is occurring. Plaintiffs' standing must be tied to a concrete and particularized injury stemming from the EA and FONSI, not just an alleged procedural violation. *See Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010) ("[P]rocedural injury, standing on its own, cannot serve as an injury-in-fact. A concrete and particular project must be connected to the procedural loss." (citing *Summers*, 555 U.S. at 496-97)). Plaintiffs have not alleged any concrete or particularized injury in fact stemming from the EA and FONSI alone and bare legal conclusions are insufficient at this stage. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences cannot defeat an otherwise proper motion to dismiss.") (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."). Since Plaintiffs have failed to demonstrate any concrete injury stemming from the EA and FONSI, even if such claims were otherwise justiciable, Plaintiffs lack standing to pursue them.

Plaintiffs' reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), is also misplaced. In that case, the Court held that, in cases involving alleged procedural injury, "the normal standards for *redressability* and *immediacy*" are relaxed. *Id.* at 572 n.7. But the relaxation of those requirements does not remove the requirement to demonstrate an actual concrete injury, a point made clear in *Summers*. *See Summers*, 555 U.S. at 496-97 (discussing footnote 7 of the *Lujan* opinion and stating that "[u]nlike redressability, . . . , the requirement of injury in fact is a hard floor."). Therefore, to the extent Plaintiffs are suggesting that *Lujan* removed the requirement for a plaintiff in a procedural injury case to demonstrate an actual concrete injury, they are wrong.

Finally, despite the fact that BLM is not in the practice of withdrawing NEPA documents that supported a prior rescinded decision, in this case BLM has decided to formally withdraw the FONSI. To be clear, BLM stands behind its arguments for why this case is moot regardless of whether the FONSI is withdrawn. However, in order to leave no doubt that BLM will not rely on this finding in the future, it has begun the process of formally withdrawing the FONSI. BLM will notify both Plaintiffs and the Court when the FONSI has been formally withdrawn.

Accordingly, challenges to the EA and FONSI are not justiciable on their own, and Plaintiffs' NEPA claim is moot.

## II. No Exception to Mootness Applies.

Plaintiffs argue that, even if the case is moot, exceptions to the mootness doctrine apply. Specifically, they argue that the exception for voluntary cessation and the exception for actions

capable of repetition yet evading review should be applied. These exceptions address situations where the same alleged conduct is likely to recur. But given what has transpired since the Decision was issued—the rescission of the Decision, the initiation of a new NEPA process, and the lapse of over a year with no new decision issued allowing grazing on the allotments—there is no reasonable expectation that the same action will recur. Thus, neither of these exceptions to mootness apply.

### A.   The voluntary cessation exception does not apply.

The voluntary cessation exception to mootness does not apply here. It is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). This exception ensures that a defendant's voluntary cessation of an alleged illegal practice would not "leave the defendant free to return to his old ways." *Friends of the Earth v. Laidlaw Evntl. Servs. (TOC)*, 528 U.S. 167, 189 (2000) (citation and internal alterations omitted). However, "in order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation." *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996) (emphasis in original) (citing *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 816 (9th Cir.1995)).

The Ninth Circuit, sitting en banc, recently reaffirmed that it treats the voluntary cessation of challenged conduct by government officials with "more solicitude" than similar action by private parties. *Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (internal quotations and citation omitted); *see id.* at 1199 (joining a majority of circuits in "concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party"). The court held that

repeal, amendment, or expiration of legislation creates a presumption that a challenge to the legislation is moot unless the challenging party shows a "reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. This "reasonable expectation of reenactment" must be "founded in the record," not "on speculation alone." *Id*.

This presumption of mootness applies equally to the Executive Branch. *See Oregon Nat. Res. Council v. Grossarth*, 979 F.2d 1377, 1379-80 (9th Cir. 1992) (finding no "reasonable expectation" that a timber sale would recur once the agency had halted it, and the mere possibility of a future sale was not enough to avoid mootness); *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1094-95 (9th Cir. 2003) (holding that a challenge to a Forest Service policy on issuing temporary grazing permits was moot once the agency had issued an official clarification, even though the agency retained the authority to return to the old policy). And as the full D.C. Circuit observed when considering how the voluntary cessation exception should apply to government actions: "At least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc). Plaintiffs have failed to rebut the presumption that Defendants' rescission of the challenged Decision has mooted this case.

First, Interior did not rescind the Decision because of the litigation. The Notice of Rescission clearly states that the Decision was rescinded because the required protest period had not been completed prior to the January 19, 2021 Decision, *see* Notice of Rescission, Defs. Mot. Ex. B (ECF No. 21-2). Plaintiffs argue that the timing of the rescission—one day after their Complaint was filed—shows that the rescission was caused by their lawsuit. Pls.' Resp. at 15.

The timing alone is not sufficient to demonstrate that the decision was made because of this litigation. *See Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998), *overruled in part on other grounds by United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (finding that plaintiffs demonstrated no more than correlation, not causation, in pointing to the timing of the agency's ameliorative actions). Moreover, if anything, the timing demonstrates that Interior's action was not caused by the Complaint and instead was based on the internal decision-making of the agency and the new administration. One day is not sufficient time for the agency to complete its internal review and approval processes for rescinding a decision. Interior rescinded the Decision not because of Plaintiffs' lawsuit, but because Interior determined that the January 19, 2021 grazing decision was procedurally flawed because it had been rushed. Interior thus rescinded the decision before the effects of that decision could be felt. *See* Defs.' Mot. Ex. B. Accordingly, Plaintiffs have not met their burden to show that Defendant's voluntary cessation arose *because of* the litigation and thus the voluntary cessation exception cannot apply.

Second, the voluntary cessation exception to mootness is generally applied in cases where "*ongoing* activities that had already caused harm and could be resumed before judicial review could be obtained." *Californians*, 2006 WL 464084 at *4 (emphasis in original). As the court explained, "[i]n contrast, here, there has been no on-the-ground implementation of the Project and judicial review can be obtained before any future implementation of the Project, thus preventing any alleged future harm to plaintiffs." *Id*. Likewise here, no grazing is occurring and the Plaintiffs will have the opportunity to challenge a future decision regarding grazing when it is made. *See* 43 C.F.R. §§ 4160.1, 4160.2 (providing a 15-day protest period following a party's receipt of a proposed grazing decision). 43 C.F.R. §§ 4160.3, 4160.4 (BLM must consider any protests received, and at the conclusion of that review, BLM may issue its final decision (with

service to the protester), and a 30-day appeal period begins upon the appellant's receipt of the

final decision).

Third, contrary to Plaintiffs' unsupported allegation, Interior did not "leave the EA and

FONSI in place to color the new NEPA process or support a new decision." Pls.' Resp. at 14.

Rather, BLM is preparing a new EIS which will support any new decision on the allotments. The

prior EA and FONSI are irrelevant to this new and more comprehensive NEPA process.

Furthermore, this is not a case where the BLM or regulated third parties have committed

resources, financial or otherwise, towards a proposed course of action prior to engaging in new

NEPA analysis. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. 3:01-CV-0640-SI,

2017 WL 1829588, at *13 (D. Or. Apr. 3, 2017), *aff'd in part, appeal dismissed in part*, 886 F.3d

803 (9th Cir. 2018) (noting that financial commitment can constitute an irretrievable

commitment of resources for purposes of NEPA). Nor is it a case where "bureaucratic

momentum" risks bias in the NEPA process. *See Protecting Arizona's Res. & Children*

*("PARC") v. Fed. Highway Admin.*, No. CV-15-00893-PHX-DJH, 2015 WL 12618411, at *4

(D. Ariz. July 28, 2015) (concluding that "the Court may consider bureaucratic momentum as a

factor in assessing whether environmental harm is likely to occur based on failure to comply

with NEPA procedures."). To the contrary, the facts demonstrate that any existing "bureaucratic

momentum" propels the agency not towards its former course of action but away from it because

it has voluntarily withdrawn the challenged Decision and has initiated the preparation of a new

EIS.[3] *See Californians*, 2006 WL 464084 at *3 (Plaintiffs' claims moot where challenged

---

[3] Prior to issuing the EIS Scoping Notice, BLM issued a notice on April 9, 2021, stating:
"Following rescission of the January 19, 2021 Decision and remand of the matter back to the
Bureau of Land Management, the BLM Burns District is reviewing options for completing the
new Bridge Creek Area Allotments Management Plan." April 9 Notice, Bridge Creek Area

Page 11 - Defendants' Reply in Support of Motion to Dismiss

project was withdrawn and the court found no reasonable likelihood that agency would rely on the same EA to revive the project).

And the cases Plaintiffs cite for this argument are inapposite because they involve demonstrated instances of commitment towards a course of action. *See, e.g., Com. of Mass. v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983), abrogated by *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360 (1989) (noting that if lease sale took place before court ordered supplemental EIS, then "the successful oil companies would have committed time and effort to planning the development of the blocks they had leased, and the Department of the Interior and the relevant state agencies would have begun to make plans based upon the leased tracts."); *Nat'l Wildlife Fed'n*, 2017 WL 1829588, at *14 (finding "that spending hundreds, tens, or even millions of dollars on the four Lower Snake River Dams during the NEPA remand period is likely to cause irreparable harm by creating a significant risk of bias in the NEPA process"); *Metcalf v. Daley*, 214 F.3d 1135, 1145-46 (9th Cir. 2000) (ordering new EA where prior EA, even if adequate, was found to be predetermined because the agency had signed a contract committing itself to a whaling proposal prior to preparing the EA).

Here, there is no comparable commitment of resources or momentum towards a particular course of action. Plaintiffs point to the EIS Scoping Notice to demonstrate that

---

Allotment Management Plan, BLM National NEPA Register, available at https://eplanning.blm.gov/eplanning-ui/project/1504684/510. The notice also states that BLM "has determined it will offer further public involvement in the NEPA process. In the coming months, the BLM Burns District will post its updated NEPA analysis on this ePlanning site for further public review and comment." The April 9 Notice along with the EIS Scoping Notice demonstrates that BLM intends to continue the new NEPA process it has begun (contrary to Plaintiffs' claims that BLM may never complete the new NEPA process), and that BLM is reviewing its options for completing a new AMP (contrary to Plaintiffs' concern that BLM may reissue the former AMP).

Defendants have not affirmatively stated an intent to craft the EIS to "address the significant problems with the EA and FONSI WWP identified in its Complaint." Pls.' Resp. at 15. But the EIS Scoping Notice initiates a scoping process, the purpose of which is to consider comments from the public before determining the scope of the EIS. *See* 86 Fed. Reg. 68,682 ("Through the public-scoping process, the BLM is seeking input on issues, actions, and alternatives that should be addressed in the EIS."). Indeed, Plaintiffs have already submitted comments on this scoping process to BLM and will have an opportunity to submit further comments on the Draft EIS when it is issued. *Id*. ("The BLM will provide additional opportunities for public participation upon publication of the Draft EIS.").[4] Defendants' commitment to prepare an EIS before making a decision regarding future grazing on the allotments shows that there can be no "reasonable expectation" that the challenged Decision will recur. *Bd. of Trustees*, 941 F.3d at 1198.

**B.    The capable of repetition yet evading review exception does not apply.**

The challenged actions in this case are also not capable of repetition yet evading review. The Supreme Court has applied this exception to the mootness doctrine "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). It applies only where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same

---

[4] Plaintiffs also complain that "[a]lthough the Bureau now says it plans to complete an EIS and new decision for the allotments, the agency has not yet even issued a draft EIS for public review, let alone a final EIS and new, lawful decision." Pls.' Resp. at 13. This statement is paradoxical given Plaintiffs' allegation that the original decisionmaking process was "rushed" and "unusually truncated." *Id*. at 7, 9. An EIS takes time to prepare and that process is fully underway. Indeed, Plaintiffs have already participated in that process by submitting comments to the BLM on the scoping notice for the EIS.

complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (modifications omitted). "Under the 'capable of repetition' prong of the exception to the mootness doctrine, the plaintiffs have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity." *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985).

Plaintiffs have not made this showing. Despite Plaintiffs' conjecture that BLM "could" issue the same decision based on the existing EA and FONSI, they have shown no reasonable expectation that BLM will do so. To the contrary, BLM's initiation of a new EIS demonstrates that it is highly unlikely that BLM will rely on the EA and FONSI to issue a new decision. *See Ctr. for Food Safety v. Vilsack*, No. C 10-04038 JSW, 2011 WL 13152739, at *3 (N.D. Cal. Apr. 14, 2011) (finding Plaintiffs did not raise reasonable expectation that agency's issuance of permits without conducting a proper environmental analysis would recur where agency was in process of preparing new EIS).

In evaluating the "capable of repetition" exception in NEPA cases, Ninth Circuit precedent "has focused on whether the environmental report at issue is confined to the challenged action only, or whether the agency will use that same report in approving a future project." *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209–10 (9th Cir. 2021). For example, courts have found NEPA challenges moot where the agency later relied on the same NEPA document for a subsequent action and not moot where the agency will rely on a new analysis for future decisions. *See id.* at 1210 (comparing these two scenarios). In this case, there is no other action that relies on the EA and FONSI—the only action relying on those documents is the now rescinded grazing decision. Given that the agency has begun the preparation of an EIS to evaluate the potential environmental impacts of authorizing an allotment

management plan, Plaintiffs cannot show that there is a reasonable expectation that BLM will

rely on the EA and FONSI in the future. *See id.* at 1212 (finding that, even though a former EIS

relied upon by the agency was still in place, because the agency was in the process of reviewing

a new EIS, Plaintiffs had "not met their burden" of showing a reasonable expectation that the

agency would rely on the former EIS in the future); *see also Tri-Valley Citizens Against A*

*Radioactive Env't v. Dep't of Energy*, No. C 92-0989 BAC, 1993 WL 467934, at *1 (N.D. Cal.

Nov. 5, 1993) (finding mere possibility that the agency may conduct similar project in future did

not give court a reason to assume that agency will not comply with NEPA).

Any new decision by Defendants would also not "evade review." This prong of the

exception applies where the alleged injury is so "inherently limited in duration" that "it is likely

always to become moot before federal court litigation is completed." *Ctr. for Biological*

*Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007). Here, Plaintiffs' arguments demonstrate

why this situation does not apply. In its prior challenges to grazing permits on the allotments at

issue, Plaintiffs not only received the requested judicial review, they won on their claims. *W.*

*Watersheds Proj. v. Bernhardt*, 391 F. Supp. 3d 1002 (D. Or. 2019) (granting temporary

restraining order barring grazing); *W. Watersheds Proj. v. Bernhardt*, 392 F. Supp. 3d 1225 (D.

Or. 2019) (granting preliminary injunction barring grazing); *W. Watersheds Proj. v. Bernhardt*,

428 F. Supp. 3d 327 (D. Or. 2019) (issuing summary judgment in WWP's favor). Moreover,

other than seeking judicial review in district court, Plaintiffs also have the opportunity to protest

any new decision and appeal and stay it administratively. *See* 43 C.F.R. §§ 4160.1-4160.4; *see*

*also Californians*, 2006 WL 464084 at *3 (dismissing NEPA claims as moot and noting that "by

statute, should defendants seek to re-institute the [challenged project], they would be required to

issue a new administrative decision and provide notice to those who commented on the EA and

an opportunity to appeal"). Thus, the challenged actions are not so limited in duration that they evade review.

Plaintiffs also argue that "[t]he duration of the action was too short to be fully litigated" because "[t]he Bureau withdrew the Decision at issue here the day after WWP filed its Complaint . . ." Pls.' Resp. at 17. But "[f]or a controversy to be too short to be fully litigated prior to cessation or expiration, it must be of *inherently* limited duration." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (emphasis in original) (internal citation and quotations omitted). In other words, the "limited duration of [the] controvers[y] [must be] clear at the action's inception." *Id*. Here, at the action's inception, the challenged Decision authorized grazing for a ten-year period. *See* Defs. Mot. Ex. A at 1. Because grazing is the harm that Plaintiffs are trying to prevent, the grazing permit period sets the duration of the controversy. Indeed, ten years is the required duration for grazing permits issued by BLM. *See* 43 C.F.R. § 4130.2(d) ("The term of grazing permits or leases authorizing livestock grazing on the public lands and other lands under the administration of the Bureau of Land Management shall be 10 years"). As explained above, such a decision would not evade review.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court dismiss this case as moot.

Dated this 9th day of February, 2022.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ Shannon Boylan
SHANNON BOYLAN, Trial Attorney
ARWYN CARROLL, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M St. NE
Suite 3.1406
Washington, DC 20002
Tel: 202-598-9584, 202-305-0456
Fax: 202-305-0506
shannon.boylan@usdoj.gov
arwyn.carroll@usdoj.gov

*Attorneys for Defendants*