Peter M. ("Mac") Lacy (OSB # 013223)
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

Talasi B. Brooks (*Pro Hac Vice*)
Western Watersheds Project
PO Box 2863
Boise, ID 83701
(208) 336-9077
tbrooks@westernwatersheds.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PENDLETON DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, et al., | Case No. 2:21-cv-297-HL |
| Plaintiffs, | **SUR-REPLY BRIEF ON MOTION TO DISMISS**[1] |
| v. | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, and BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

---

[1] This sur-reply brief updates the Proposed Sur-reply Brief submitted with WWP's unopposed motion for leave to file a sur-reply on February 17, 2022 (ECF. No. 26), to reflect the February 18, 2022 withdrawal of the Finding of No Significant Impact ("FONSI"). *See* ECF No. 28 (Notice of withdrawal of FONSI).

In its rush to respond to this lawsuit by withdrawing the actions and decisions at issue, the Bureau confirms that this case is reviewable under well-established exceptions to the mootness doctrine. The Bureau's belated withdrawal of the Finding of No Significant Impact ("FONSI") only after WWP filed its response brief and proposed sur-reply brief further confirms that the voluntary cessation exception to the mootness doctrine applies. Moreover, the Bureau misreads the Ninth Circuit's opinion in *Native Village of Nuiqsut v. Bureau of Land Management*, which holds that only when an unlawful National Environmental Policy Act ("NEPA") analysis at issue has been *replaced* or *superseded* by a completed new analysis might a case challenging an action based on such an analysis be moot. 9 F.4th 1201, 1212 (9th Cir. 2021). WWP's standing to seek judicial relief for their injuries from these actions is judged at the time the case was filed and is not affected by the agency's *post hoc* actions.

The Bureau's withdrawal of the FONSI now marks its second effort evade review of its final agency action in response to this litigation. WWP challenged the Bureau's January 19, 2021 Final Decision (the "Decision") to authorize livestock grazing on the Bridge Creek Allotments, along with its associated Environmental Assessment ("EA") and FONSI, in part because the Secretary "issued the Final Decision prematurely, without allowing for full public participation, including the required 15-day public protest period." Compl. ¶ 110, ECF No. 1. For example, WWP alleged that since plaintiffs Oregon Natural Desert Association and Western Watersheds Project only received courtesy copies of the Proposed Decision by email on January 1, 2021 and did not receive official paper copies until January 8, 2021 and January 9, 2021, respectively, they should have had until January 25, 2021 to file administrative protests, under the Bureau's regulations. *Id*. ¶¶ 97, 99. In rescinding the Decision the next day, the Bureau conceded that the Proposed Decision "was transmitted to interested parties by postal or electronic mail days [after

SUR-REPLY BRIEF—1

it was signed], resulting in confusion about how the Department would calculate the protest period and, in some instances, preventing the interested parties from having a full 15 days after receipt to submit protests, *as is required by applicable regulation*." Defs.' Exh. B, ECF No. 21-2 (emphasis added). In short, the Bureau admitted that the protest period was unlawfully truncated, as alleged in the Complaint, and rescinded the Decision in response to this lawsuit.

While the Bureau now contends that "Interior's action was not caused by the Complaint," Reply Br. at 10, ECF No. 25, they also argue that, by rescinding the Decision, "Interior and the BLM have already acted to address, even cure" WWP's injuries, Mot. to Dismiss at 9, ECF No. 21. After WWP showed in their response brief that they also suffered justiciable injuries from the EA and FONSI—which were still in place—the Bureau indicated in its reply that it had begun an unspecified "process of formally withdrawing" the FONSI. Reply Br. at 7. The Bureau *has not*, however, initiated any process to withdraw the challenged EA. *See* ECF No. 28 (Notice of withdrawal of FONSI only). The agency claims the FONSI withdrawal "remove[s] all doubt regarding the mootness of this case." *Id*. at 1.

In fact, the Bureau's new withdrawal of the FONSI does the opposite. It removes all doubt that the agency's cessation of the offending actions responds directly to WWP's litigation, placing the remaining controversy squarely within the Ninth Circuit's mootness exception. *See Sze v. I.N.S.*, 153 F.3d 1005 (9th Cir. 1998) (voluntary cessation must arise because of litigation). The Bureau cannot reasonably argue that WWP can show no more than correlation between the litigation and the FONSI withdrawal when the agency expressly admits it initiated a process "to remove all doubt regarding the mootness of this case." Reply Br. at 1, 10. Even if there remained some doubt that the Bureau's notice of rescission of the Decision the very next day after WWP filed its lawsuit responded to this litigation, the agency has now begun the process of

withdrawing a second agency action in a move explicitly designed (once again) to try to moot the case. Together, these withdrawals show a pattern of action to avoid review by this Court.

It is well-established that an agency cannot moot a plaintiff's case by stopping its offending conduct in this way. "Voluntary cessation saves an issue from becoming moot if the defendant voluntarily stops the allegedly illegal conduct to avoid a judgment against him unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003). A defendant's statement they will not resume the challenged conduct, standing alone, does not carry the "heavy burden" of showing mootness. *U.S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (holding defendant's statement "cannot suffice to satisfy [Defendants'] heavy burden of persuasion" in showing mootness); *Nuiqsut*, 9 F.4th at 1215 (same).

The Bureau's attempt to carry its heavy burden here rests only on statements made in briefing, the Notice of Rescission, and the belated FONSI withdrawal. *See* Defs.' Exhs. A & B, ECF Nos. 21-1 & 21-2; Notice of Withdrawal of FONSI, ECF No. 28. The agency has not filed any declaration asserting that it will correct the violations of law WWP identified. It has never formally clarified how the public protest period is calculated to prevent the protest period for any new Decision from being unlawfully truncated. The February 26, 2021 Notice of Rescission only promises "additional processes" that have never occurred—it does not commit to any different action or outcome, and it did not withdraw or rescind the Bureau's EA supporting the challenged grazing nor the agency's finding (the FONSI) that the proposed grazing would have "no" significant environmental effects. *See* Defs.' Exh. B, ECF No. 21-2. A year later, the Bureau still refuses to withdraw the EA. *See* Reply Br. at 1. This is not a case where the unlawful Decision has been replaced or clarified and the agency has admitted its conduct in issuing the Decision

was constitutionally defective or otherwise substantively flawed. *See Forest Guardians*, 329 F.3d at 1095 (holding conduct could not reasonably be expected to recur under these circumstances).

The Bureau essentially seeks the precise outcome that the voluntary cessation exception is intended to avoid—one that will leave the agency "free to return to [its] old ways." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 170 (2000). The Court should not allow this, especially in light of the Bureau's track record of issuing unlawful decisions with regard to the Bridge Creek grazing allotments at issue in this case. *See W. Watersheds Proj. v. Bernhardt*, 428 F. Supp. 3d 327 (D. Or. 2019) (holding previous grazing decision unlawful); Defs.' Exh. B (admitting shortened protest period for decision here violated protest regulations). Instead, this Court can and should issue declaratory relief to prevent the Bureau from issuing a third unlawful Decision and hold on the merits that the still-intact EA is unlawful. *See Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (granting declaratory relief).

Moreover, the Bureau misreads the Ninth Circuit's opinion in *Native Village of Nuiqsut*. That case recognizes that where an agency may unlawfully base a future decision on an existing NEPA analysis, a plaintiff's injury is capable of repetition. *Native Village of Nuiqsut*, 9 F.4th at 1212–13 ("Continued reliance on the GMT2 SEIS would likely allow Plaintiffs to show that their claims were "capable of repetition"….") That is why the Ninth Circuit held that the plaintiffs' action was only fully moot where the defendant agency had *replaced* and *superseded* the analysis upon which the offending EA relied. *Id*. at 1212. The plaintiffs' injury in that case was only *not* capable of repetition because the EA at issue applied exclusively to ConcoPhillips' 2018–19 exploration drilling program, which had already been completed; the analyses upon which plaintiffs alleged that EA unlawfully relied had been replaced; and the NEPA regulations that applied had been replaced, imposing new and different regulatory requirements. *Id*. at 1210.

But that is not the case here—although the FONSI has now been withdrawn, the EA remains in place. The Bureau does not contend it could not lawfully issue an identical Decision based upon the existing EA; the agency only claims in its briefs that it does not intend to do so. And the Bureau never expressly denies that the still-intact EA may cloud its analysis in the EIS it has promised but not yet begun. WWP's injury is capable of repetition, yet evading review.

Finally, actions that occurred *after* WWP filed the Complaint cannot undermine its standing. Standing looks at the facts "as they exist at the time the complaint was filed." *Am. C.L. Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n. 12 (1992). The Bureau contends that since it rescinded the Decision and withdrew the FONSI after the litigation was filed, and no grazing is presently occurring, WWP cannot show injury to support standing. Defs.' Reply Br. at 6. This argument conflates standing with mootness. As the Supreme Court recently explained:

> At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings…. And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). *See also Laidlaw*, 528 U.S. at 708–09 ("the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal quotation marks omitted).

There is no dispute here that WWP had suffered a cognizable legal injury at the time it filed its lawsuit; indeed, the Bureau purposefully rescinded the Decision "before the effects of the decision could be felt." Defs.' Reply Br. at 10. WWP's Complaint alleged substantive and procedural injuries to its concrete interests from the Bureau's Decision, EA, and FONSI, which

must be taken as true for purposes of this Motion to Dismiss. *See* Compl. ¶¶ 22–23, 121, 129, 136, 141, 147; *see also Lujan*, 504 U.S. at 561 (at this stage, the Court must presume that these "general allegations embrace those specific facts that are necessary to support the claim.") The Bureau cannot defeat standing through actions taken after the case was filed—whether WWP's injuries remain reviewable by this Court is a mootness inquiry.

Both exceptions to the mootness doctrine apply and the Court may grant declaratory and other relief to prevent the Bureau from continuing its pattern of unlawfully authorizing grazing on these allotments. The Bureau's voluntary cessation of the challenged conduct by withdrawing the Decision and FONSI in response to WWP's litigation cannot render this case unreviewable. WWP's injury is capable of repetition because the Bureau may issue an identically-flawed Decision, either based upon the existing EA or following a new NEPA process. The case and controversy here remains live, WWP has standing, and this Court should deny the motion to dismiss.

DATED this 2nd day of March, 2022.

Respectfully submitted,

s/ Talasi B. Brooks

_____

Talasi B. Brooks (*Pro Hac Vice*)
Western Watersheds Project

s/ Peter M. Lacy

_____

Peter M. ("Mac") Lacy
Oregon Natural Desert Association

Attorneys for Plaintiffs

SUR-REPLY BRIEF—6