IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **SECRETARY OF THE UNITED STATES DEPARTMENT OF INTERIOR and BUREAU OF LAND MANAGEMENT**, <br><br> Defendants. | Case No. 2:21-cv-297-HL <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Andrew Hallman issued Findings and Recommendation (F&R) in this case on November 8, 2022. Judge Hallman recommends that this Court (1) grant Defendants' motion to dismiss Plaintiffs' third claim and the portion of Plaintiffs' first claim related to the shortened protest period, and (2) otherwise deny Defendants' motion to dismiss. Both Plaintiffs and Defendants filed objections to the F&R. On November 13, 2023, the Court requested supplemental briefing to obtain any new relevant information or evidence relating to mootness. For the reasons discussed below, the Court adopts Judge Hallman's F&R.

### STANDARDS

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court

PAGE 1 – ORDER

shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

## BACKGROUND

On January 19, 2021, on his last day in office, then-Secretary of the Interior, David Bernhardt, issued a decision authorizing the grant of grazing permits to Hammond Ranches, Inc. (HRI) on four allotments in southeastern Oregon. HRI had previously held grazing permits for those allotments that BLM declined to renew after two of the ranch owner and operators were convicted on criminal charges stemming from allegations that they intentionally set fire to public lands. On January 2, 2019, on his last day in office, then-Secretary of the Interior Ryan Zinke had issued a decision requiring the issuance of grazing permits to HRI on the four allotments. This Court declared those permits in violation of the Administrative Procedure Act (APA), and the permitting process on the subject public lands was continued by the Bureau of Land

Management (BLM). BLM conducted an environmental assessment (EA). During that process, then-Secretary Bernhardt issued the challenged decision.

Plaintiffs, environmental organizations, filed a complaint on February 25, 2021, challenging the decision and alleging that Defendants, the current Secretary of the Interior and BLM, violated the Federal Land Policy and Management Act (FLPMA), the National Environmental Policy Act (NEPA), the APA, and the Steens Mountain Cooperative Management and Protection Act of 2000 (Steens Act) in issuing the decision. The current administration rescinded the decision on February 26, 2021, and initiated a new environmental impact statement (EIS) process on the project. The government moves to dismiss Plaintiffs' claims as moot.

## DISCUSSION

Judge Hallman set out the following conduct by Defendants as alleged by Plaintiffs to be illegal:

> (1) the Secretary prematurely assuming jurisdiction of the grazing decision before it became a "case" and improperly shortening the required protest period before issuing a final grazing decision; (2) awarding the permit to an unqualified applicant under the Land Policy Act because the Ranch had a record of permit violations and other applicants did not; (3) basing the final decision on a flawed and incomplete EA and related FONSI; (4) failing to ensure the permit complied with applicable land use plans issued under the Land Policy Act; and (5) issuing a permit that violates the Steens Act by not adequately protecting the Steens Management Area and misinterpreting the Steens Act to include an additional competing purpose of promoting viable and sustainable grazing operations.

ECF 38 at 15 (citations omitted). Judge Hallman concluded that none of the alleged conduct was moot under the voluntary cessation doctrine except improperly shortening the required protest period (part of claim one) and basing the final decision on a flawed and incomplete EA and related FONSI (claim three). Thus, Judge Hallman concluded that those claims should be dismissed as moot and all other claims should remain.

PAGE 3 – ORDER

The Government objects that these claims should also be dismissed as moot. Plaintiffs object that claim three should not be dismissed as moot, because Defendants have not shown that the conduct is not reasonably likely to recur. Plaintiffs also object to the Findings and Recommendation referring to grazing "rights" rather than "privileges."

Neither party objects to the portion of the F&R concluding that the "capable of repetition yet evading review" exception to mootness does not apply. Nor do Plaintiffs object to Judge Hallman's conclusion regarding their claim one. The Court therefore reviews those portions of the F&R for clear error. The Court finds no clear error and adopts those portions of the F&R. The Court reviews *de novo* the portions of the F&R objected to by the parties.

### A. New Evidence and Arguments

Both parties submit new evidence and argument to this Court that was not presented to Judge Hallman. It is within this Court's discretion whether to accept new evidence or argument submitted with objections. *See Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (discussing the district court's discretion to consider new arguments raised in objections); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) (rejecting the Fourth Circuit's requirement that a district court *must* consider new arguments raised in objections to a magistrate judge's findings and recommendation); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (discussing the circuit split on whether a district court must or may consider new evidence when reviewing *de novo* a magistrate judge's findings and recommendation, and concluding that a district court "has discretion, but is not required" to consider new evidence); *see also* 28 U.S.C. § 636(b)(1) (stating that the district court judge "may also receive further evidence"). The Court exercises its discretion and considers the parties' new evidence and argument.

B.  Defendants' Objections to the F&R

    1.  Requirements of the Voluntary Cessation Exception

Defendants first object that the cessation of their conduct was not as a result of this litigation and thus the voluntary cessation doctrine does not apply. Plaintiffs dispute that conduct must cease as a result of litigation in the Ninth Circuit. Regardless of the legal requirement in this circuit, Defendants have not shown that their voluntary conduct was wholly independent of litigation, considering the history this case.

It is the party asserting mootness who "bears the burden to establish that a once-live case has become moot. That burden is heavy where . . . the only conceivable basis for a finding of mootness is [a defendant's] voluntary conduct." *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (quotation marks omitted). Defendants' new evidence includes a declaration and internal BLM records indicating that BLM employees created an information memorandum about the allotments on February 16, 2021, and a draft recission decision on February 24, 2021. This evidence, Defendants argue, shows that the rescission was not in response to the current litigation, because both the memorandum and draft decision were created *before* Plaintiffs filed their complaint on February 25, 2021. Defendants, however, have not submitted the information memorandum to the Court, and the Court will not assume that the memorandum supports Defendants' contention. Defendants did provide a copy of the draft recission decision, which was created one day before Plaintiffs filed their complaint. ECF 43-5.

Given the circumstances leading up to this case, however, it was readily apparent that Plaintiffs intended to initiate litigation before they filed their complaint on February 25, 2021. Before filing their complaint, Plaintiffs had (1) communicated in January 2021 to Defendants their belief that the challenged decision was unlawful, (2) communicated in January 2021 to Defendants that they reserved the right to take legal action in response to the unlawful decision,

PAGE 5 – ORDER

and (3) sued Defendants over an earlier decision granting grazing privileges to HRI for the same allotments in 2019. ECF 50-7 at 2-3; *W. Watersheds Project v. Bernhardt*, 428 F. Supp. 3d 327 (D. Or. 2019). Although the Court recognizes that Defendants' proffered reasons for the rescission—the change in administration on January 20, 2021, and the new administration's realization that the previous process was flawed—also likely contributed to Defendants' choice to rescind their earlier decision, these reasons do not establish that the rescission was independent of the litigation.

### 2. Whether Defendants Show Some Conduct Is Not Reasonably Likely to Recur

Defendants next object to the portion of Judge Hallman's F&R concluding that Defendants have not shown that some of the challenged conduct is not reasonably likely to recur. Defendants rely primarily on the fact that they have rescinded the challenged decision, withdrawn the Finding of No Significant Impact, and begun to prepare a new EIS that will "necessarily reexamine" the issues raised by Plaintiffs. ECF 43 at 11. Defendants previously made these arguments in the briefing they submitted to Judge Hallman. ECF 21, ECF 25.

In its supplemental brief, the Government asserts that in the new EIS process, the government has obtained new information relating to "Plaintiffs' claims under FLPMA, the Sage-Grouse Amendments, and the Steens Act, including new Habitat Assessment Framework Reports for sage-grouse habitat within the Bridge Creek Area; Updated Land Health Assessment Evaluation, and Determinations for all four allotments within the Bridge Creek Area; and new carrying capacity analyses and use areas for each alternative evaluated." The government argues that through the new EIS, the government will make a new final agency decision that will be subject to its own judicial review process, and that will be the mechanism by which Plaintiffs can challenge Defendants' decision if Plaintiffs disagree with it, not by a continuation of this lawsuit challenging the previous agency decision.

PAGE 6 – ORDER

The Court understands Defendants' point that the new EIS process will result in a final agency decision that may be subject to its own legal challenge. That, however, does not necessarily mean that Plaintiffs' claims in this lawsuit are moot. As Judge Hallman described, the conduct he identified has not been disavowed in a manner demonstrating that it is not reasonably likely to recur.

The Court agrees with the portion of the F&R finding that Defendants fail to show that "it is absolutely clear that" the complained-of conduct related to Plaintiffs' second, fourth, and fifth claims for relief, as well as the conduct related to Plaintiffs' first claim for relief other than the shortened protest period, is "not reasonably . . . expected to recur." *W. Virginia*, 142 S. Ct. at 2607. Defendants' new evidence similarly does not demonstrate that the challenged conduct is unlikely to recur. Accordingly, the Court adopts the portion of the F&R concluding that Plaintiffs' first claim for relief—except as related to the shortened protest period—and their second, fourth, and fifth claims for relief are not moot.

## C. Plaintiffs' Objections to the F&R

### 1. General Mootness Standards

Plaintiffs object to the F&R's statement of the applicable law, arguing that it "erroneously states the mootness doctrine applicable in this case" by incorporating case law that addresses only standing or other doctrines. ECF 44 at 20. Plaintiffs argue that, because the "central question[] for deciding" the motion to dismiss is whether Defendants have met their burden under the voluntary cessation standard, Judge Hallman erred in including "General Mootness Standards" in his F&R. *Id.* at 23.

Judge Hallman did not err in discussing the doctrine of standing in his general mootness standards, as the two doctrines are interrelated. As this Court has stated, "[w]hether standing and the other requirements for a live case or controversy exists throughout the entirety of a case is

PAGE 7 – ORDER

considered under the doctrine of mootness." *Wolfe v. City of Portland*, 566 F. Supp 3d 1069, 1081 (D. Or. 2021). Although this Court has also clarified that "[t]he doctrine of mootness is more complex, however, than simply 'standing set in a time frame' because it has exceptions that do not apply to standing and because there may be circumstances in which certain factors are viewed more flexibly in considering mootness than they would be in considering standing," *id.* at 1082, it was not error to first describe the general standards of mootness, before describing the voluntary cessation exception. Judge Hallman recognized that the voluntary cessation exception was the "correct[] focus" for the parties' arguments related to the motion to dismiss. The Court adopts the portion of Judge Hallman's F&R describing the general standards of mootness.

### 2. Claim Three

Plaintiffs argue that their third claim for relief, which alleges that the Secretary violated NEPA and the APA by basing the January 19th decision on a flawed and inadequate EA, is not moot. Although Defendants have initiated an EIS, no new NEPA analysis has yet superseded the challenged EA. Defendants have not withdrawn the problematic EA and Allotment Management Plan (AMP), nor have they conceded the alleged defects in these documents. The only error Defendants have conceded is the shortened protest period before the Secretary's January 19th decision. By neither withdrawing nor acknowledging the flaws in the EA and AMP, Plaintiffs argue that Defendants are "leaving the door open to issue an identical or substantially similar decision at any time." ECF 44 at 21.

A defendant's admission that its conduct was unlawful weighs in favor of a finding of mootness as to that complained-of conduct. *See, e.g.*, *Forest Guardians v. United States Forest Service*, 329 F.3d 1089, 1095 (9th Cir. 2003) (holding that defendants met the heavy burden of showing that their voluntary conduct mooted the case where defendants admitted the challenged conduct was unlawful, because "[i]t is unreasonable to think that the [defendant] would return to

PAGE 8 – ORDER

conduct it has admitted to this court is [unlawful]"). Assurances from the government that challenged conduct will not recur also weigh in favor of finding mootness based on voluntary cessation. *Brach*, 38 F.4th at 13 (holding that voluntary cessation mooted the case, in part because the defendant had "unequivocally renounced" the challenged conduct). The Court must also consider, however, "whether the government's new position 'could be easily abandoned or altered in the future.'" *Fikre*, 904 F.3d at 1038.

Regarding the EIS causing Plaintiffs' third claim to be moot, the government has completed public scoping and is working toward a first draft. Although initially it was estimated that a first draft would be completed by September 2023, it is now expected to be completed in June 2024. Despite the delay, the government has continued to expend resources and move forward on the EIS. The Court, however, has some concerns, given the history of this case and the delays shown thus far. Defendants have not yet completed an EIS, nor have they admitted that it was unlawful to issue the challenged decision without completing an EIS. Defendants also have not demonstrated that there are "procedural safeguards insulating [their decision to complete an EIS] from arbitrary reversal." *Fikre*, 904 F.3d at 1038. Thus, this claim is dismissed without prejudice. If it appears that the government's current course of action is going to be "easily abandoned or altered in the future," *id.*, then Plaintiffs may seek leave to reassert this claim.

Plaintiffs' alleged NEPA violations, including failure to consider alternatives, failure to take a "hard look" at impacts of the action, failure to analyze the alternative actually adopted, and failure to disclose the effects of the alternative adopted, ECF 1 ¶ 135(b)-(g), will all be part of the EIS. To the extent Plaintiffs are dissatisfied with the agency's new final decision after it is issued, that would be an issue for a future challenge against the EIS, unless Plaintiffs are given leave to reassert their EA claim as discussed above.

PAGE 9 – ORDER

### 3. The Term "Grazing Rights"

Plaintiffs object to Judge Hallman's reference to "grazing rights" in his F&R. They ask the Court to modify the F&R to recognize that a permit to graze livestock on public lands creates only a regulated privilege, not a right. Defendants do not respond to this objection.

The statute authorizing grazing permits discusses "grazing privileges" and states that such permits do not create any "rights." 43 U.S.C. § 315b. Courts, however, including the U.S. Supreme Court, have used the terms "grazing rights" and "grazing privileges" somewhat interchangeably. *See, e.g.*, *Pub. Lands Council v. Babbitt*, 529 U.S. 728, 735 (2000) (referring to grazing privileges); *United States v. Fuller*, 409 U.S. 488, 495 (1973) (J. Powell, dissent) (referring to grazing rights); *Corrigan v. Haaland*, 12 F.4th 901, 911 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 901 (2022) (referring to grazing privileges); *United States v. Est. of Hage*, 810 F.3d 712, 718 n.2 (9th Cir. 2016) (referring to grazing rights). Nonetheless, because the government did not respond or object to this request by Plaintiffs, the Court hereby modifies the F&R to clarify that a permit to graze livestock on public lands grants a recipient grazing privileges and does not create any right in the lands.

## CONCLUSION

The Court ADOPTS Judge Hallman's F&R (ECF 38), as clarified and modified in this Order. Accordingly, the Court GRANTS IN PART Defendants' motion to dismiss (ECF 21) as to the portion of Plaintiffs' first claim for relief based on the shortened protest period and as to Plaintiffs' third claim for relief. The Court otherwise DENIES Defendants' motion to dismiss.

**IT IS SO ORDERED**.

DATED this 4th day of December, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge